# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENDA WILSON,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　　Defendant. | Case No.  1:14-cv-01392-AWI-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT PLAINTIFF'S SOCIAL SECURITY APPEAL BE DENIED<br><br>(ECF Nos. 30, 34, 35) |

## I.

## INTRODUCTION

Plaintiff Brenda Wilson ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits and supplemental security income pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone for findings and recommendations to the District Judge.

Plaintiff suffers from degenerative disease of the lumbar spine with a slipped disc and sciatica, Bell's Palsy, bilateral hip arthrosis, chronic obstructive pulmonary disease (COPD),

1  sleep apnea, depression, anxiety, and chronic pain.  For the reasons set forth below, Plaintiff's

2  social security appeal should be denied.

3                                              **II.**

4                         **FACTUAL AND PROCEDURAL BACKGROUND**

5         On November 17, 2011, Plaintiff filed a Title II application for disability benefits and on

6  November 29, 2011, Plaintiff filed a Title XVI application for supplemental security income,

7  alleging disability beginning on April 30, 2009.  (AR 215-28.)  On June 1, 2012, Plaintiff's claim

8  was initially denied, and was denied upon reconsideration on December 4, 2012.  (AR 153-58,

9  164-68.)  Plaintiff requested and received a hearing before Administrative Law Judge John

10  Cusker ("the ALJ").  On November 20, 2013, Plaintiff appeared at a hearing.  (AR 30-58.)

11        On March 18, 2014, the ALJ denied Plaintiff's application for supplemental security

12  income and disability benefits.  (AR 13-25.)  Plaintiff appealed to the Appeals Council.  (AR 8-

13  9.) On July 2, 2014, the Appeals Council denied Plaintiff's request for review.  (AR 1-7.)

14        **A.     Hearing Testimony**

15        Plaintiff appeared with counsel and testified at a hearing before the ALJ on November

16  20, 2013.  (AR 30-58.)  Plaintiff was 59 years old at the time of the hearing.  (AR 34.)  Plaintiff

17  has a driver's license and is able to drive.  (AR 34-35.)  Plaintiff is a high school graduate.  (AR

18  35.)

19        Plaintiff's last job was as a caretaker for In-Home Supportive Services for her husband's

20  cousin.  (AR 35.)  Plaintiff worked approximately 25 hours a week.  (AR 35.)  She had to lift

21  more than 20 pounds, but not more than 50 pounds.  (AR 36.)  She did not do any other work

22  during the past 15 years.  (AR 35.)

23        Plaintiff alleges that she has been unable to work since April 30, 2009.  (AR 36.)

24  Plaintiff has not done any work since then.  (AR 36.)  Since that date, she has collected

25  unemployment.  (AR 36.)  In order to receive unemployment, she had to certify that she was

26  ready and able to work.  (AR 36-37.)  She looked for work as a caregiver.  (AR 37.)  However,

27  she testified that if she had been offered a job, she could not have done it because she cannot do

28  any lifting.  (AR 37.)

1    Plaintiff is able to lift 15 pounds.  (AR 37.)  In addition to her problems with lifting,

2    Plaintiff's anxiety and depression interfere with her ability to work.  (AR 37.)  Plaintiff takes

3    medication and has been in therapy at Adventist Health in Selma for over a year and a half.  (AR

4    37.)  Plaintiff acknowledges that she takes a lot of medications.  (AR 38.)  Plaintiff is taking a

5    new medication, zolpidem tartrate, for sleep; and it is helping her.  (AR 38.)  The medications

6    that Plaintiff takes for anxiety and depression help a little.  (AR 38.)  Plaintiff does not find the

7    medications she takes for pain, narcotics and gabapentin, to be very helpful, but the doctor does

8    not want to give her anything stronger.  (AR 39.)

9    Plaintiff receives all of her treatment through Adventist Health in Fowler.  (AR 42.)  She

10   sees Dr. Chen and Dr. Yates there.  (AR 42.)  As of the date of the hearing, Plaintiff had only

11   seen Dr. Chen one time for her physical problems, during which they were getting acquainted,

12   but she had an appointment to see him the following Tuesday.  (AR 51-52.)  She previously went

13   to United Health Care, but she stopped going there because the doctors were leaving there, and if

14   she was going to have a new doctor, she wanted to go to one closer to her house.  (AR 42.)

15   Plaintiff previously saw Dr. Norma Solis at United Health Care.  (AR 42-43.)  Plaintiff saw Dr.

16   Solis longer than any other doctor.  (AR 43.)

17   Plaintiff lives with her husband and son.  (AR 39.)  She is able to dress and bathe herself,

18   prepare breakfast for herself, help with laundry, dust, wash dishes, fix her bed, and spend about

19   half of the day doing Sudoku crossword puzzles.  (AR 40.)  She lies down on her stomach on the

20   bed when she does crossword puzzles.  (AR 41.)  She cannot sit or stand for two hours at a time.

21   (AR 41.)  She can stand for about twenty minutes and walk a block.  (AR 41-42.)  She does not

22   belong to any religious or social organizations.  (AR 40-41.)

23   Plaintiff cannot work at her previous job because her mental problems make it hard for

24   her to leave her house.  (AR 43-44.)  Plaintiff has an anxiety attack if she leaves her house, and

25   sometimes when she leaves her bedroom.  (AR 43.)  She does not have any problems dealing

26   with people or problems with concentration.  (AR 44.)  She cannot leave home because of both

27   her mental and physical condition.  (AR 43.)  Plaintiff cannot go shopping because of her COPD

28   and the walking involved.  (AR 43.)

1    Plaintiff has pain in her low back that hurts when she bends over, sneezes, and coughs.

2  (AR 45.)  She has some back pain constantly and it can be severe.  (AR 45.)  Plaintiff's back

3  pain is sharp and travels down to her knees in both legs.  (AR 45-46.)  Plaintiff uses a TENS unit

4  that she got about a year and a half before the hearing.  (AR 46.)  She uses the TENS unit twice a

5  day for 90 minutes at a time.  (AR 46.)  However, Plaintiff does not use and has never tried any

6  heat, ice, or massage.  (AR 46.)

7    Plaintiff also has sleep apnea, which she uses a CPAP for, but she still does not wake up

8  feeling refreshed.  (AR 48-49.)  Plaintiff lies down during the day because she is tired.  She has

9  been waking up tired for a few years, but she does not know what it is caused by.  (AR 47.)  She

10  still has problems with irritable bowel, which she thinks is caused by anxiety.  (AR 47.)  She has

11  bad days with her irritable bowel three times a week, during which she is in the bathroom for

12  about thirty percent of the day.  (AR 47-48.)  She takes dicyclomine for her irritable bowel.  (AR

13  48.)  Dust, fumes, and similar things make her breathing worse.  (AR 49.)  Plaintiff's weight has

14  fluctuated thirty pounds in the last two years.  (AR 49.)

15    Plaintiff recalled going to see the two consultative examining doctors.  (AR 49.)  She

16  remembered that the appointments were shorter than her appointments with her treating doctor.

17  (AR 49-51.)

18    A vocational expert, Judith Najarian also testified during the hearing.  (AR 52-56.)

19  **B.    ALJ Findings**

20  The ALJ made the following findings of fact and conclusions of law:

21  •    Plaintiff meets the insured status requirements of the Social Security Act through

22      June 30, 2014.

23  •    Plaintiff has not engaged in substantial gainful activity since April 30, 2009, the

24      alleged onset date.

25  •    Plaintiff has the following severe impairments: COPD; obesity; and degenerative

26      disc disease of the lumbar spine.

27  •    Plaintiff does not have an impairment or combination of impairments that meets

28      or medically equals the severity of one of the listed impairments.

- Plaintiff has the residual functional capacity to perform medium work. She can lift or carry up to 50 pounds occasionally and 25 pounds frequently; and sit, stand, and/or walk six hours each out of an eight hour workday.  She can do unlimited pushing or pulling, except as indicated for lifting and carrying.  She can frequently climb ramps and stairs; occasionally climb ladders, ropes or scaffolds; and frequently balance, stoop, kneel, crouch or crawl.  She has no manipulative, visual, or communicative limitations.  She must avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation; and she must avoid concentrated exposure to unprotected heights.

- Plaintiff is capable of performing past relevant work as a home attendant. Considering Plaintiff's vocational factors and residual functional capacity, there are also other jobs she can perform.

- Plaintiff has not been under a disability as defined in the Social Security Act from April 30, 2009, through the date of the decision, March 18, 2014.

(AR 13-25.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[1] Batson v. Commissioner of Social Sec. Admin, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

---

[1] Plaintiff has raised claims under both the Supplemental Security Income and Disability Insurance Benefits regulations.  The regulations are virtually identical and are set forth in two separate sections, 20 C.F.R. §§ 416.900-416.999 and 20 C.F.R. §§ 404.1500-404.1599.  The Court shall refer to the regulations under 20 C.F.R. 404.1500 et seq. when addressing the relevant regulations in this action.

Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.

Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.

Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means more than a scintilla, but less than a preponderance.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006).  However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be

1  upheld.").

2                                    **IV.**

3                      **DISCUSSION AND ANALYSIS**

4        Plaintiff raises three issues in this appeal.  Plaintiff argues that the ALJ erred by: (1)

5  rejecting the opinion of Dr. Solis, her treating doctor; (2) discrediting Plaintiff; and (3) failing to

6  consider the combined impact of all of Plaintiff's impairments on her functioning.

7        **A.     Dr. Solis's Opinion**

8        Plaintiff argues that Dr. Solis's opinion in her December 2011 Residual Functional

9  Capacity Questionnaire is entitled to great weight, because she was Plaintiff's long-term treating

10  physician.  Dr. Solis opined that Plaintiff was limited to sitting and standing for 20 minutes at a

11  time; limited to sitting and standing/walking for a total of two hours each in a day; needed three

12  breaks for each two-hour period; could only lift 10 pounds occasionally; could never twist; and

13  could occasionally stoop-bend, crouch, and climb ladders and stairs.  (AR 351-52.)  Defendant

14  argues that the ALJ gave detailed reasons supported by substantial evidence for giving no weight

15  to Dr. Solis's opinion.

16        The weight to be given to medical opinions depends upon whether the opinion is

17  proffered by a treating, examining, or non-examining professional.  See Lester v. Chater, 81 F.3d

18  821, 830-31 (9th Cir. 1995).  In general, a treating physician's opinion is entitled to greater

19  weight than that of a nontreating physician because "he is employed to cure and has a greater

20  opportunity to know and observe the patient as an individual."  Andrews v. Shalala, 53 F.3d

21  1035, 1040-41 (9th Cir. 1995) (citations omitted).  If a treating physician's opinion is

22  contradicted by another doctor, it may be rejected only for "specific and legitimate reasons"

23  supported by substantial evidence in the record.  Ryan v. Commissioner of Social Sec., 528 F.3d

24  1194, 1198 (9th Cir. 2008) (quoting Bayless v. Barnhart, 427 F.3d 1121, 1216 (9th Cir. 2005)).

25        The ALJ found:

26        As for the opinion evidence, Norma Solis, M.D. the claimant's treating physician,
         completed a Physical Residual Functional Capacity Questionnaire on December
27        22, 2011 [Exhibit 2F].  Dr. Solis has been treating the claimant since January
         2008, and reported the following diagnoses: COPD; sleep apnea; hypertension;
28        and back pain/degenerative disc disease; the claimant also had depression and

                                      7

anxiety.  Dr. Solis opined that the claimant's symptoms would frequently interfere with the attention and concentration necessary to sustain simple, repetitive work tasks; she is incapable of even "low stress" work.  He opined she could sit, stand, and or walk for less than two hours total, out of eight hours, would need three unscheduled breaks, every two hours during an eight hour day, could occasionally lift up to 10 pounds but never over 10 pounds.  She could rarely twist, never stoop, bend, crouch, or climb ladders or stairs.  On the other hand, she assessed no manipulative limitations.  She would likely be absent from work about four days per month.

Dr. Solis's opinion is not supported by objective findings.  Her treatment records indicate minimal treatment, consisting mostly of medication refills, and reported improvement at times with medications.  Imaging of the claimant's lumbar spine, and physical examination findings, show minimal abnormality.  Dr. Solis['s] opinion is also inconsistent with other medical source opinions, as noted below. For these reasons, I accord Dr. Solis's opinion no weight.

(AR 21-22.)

       1.    <u>Minimal Treatment and Reported Improvement at Times with Medication</u>

Plaintiff argues that her treatment was not conservative because Dr. Solis prescribed opioid and anti-convulsans; referred her to a pain specialist who gave her at least two injections, which she could not afford to continue; referred her to a sleep specialist and prescribed a CPAP machine; and prescribed psychotropic medications for her depression and anxiety. (AR 318-40, 378-91.)  Defendant counters that Dr. Solis gave Plaintiff minimal treatment consisting mostly of refilling Plaintiff's pain medications.

The ALJ may reject the opinion of a treating physician who prescribes conservative treatment but opines that the claimant suffers a disabling condition.  <u>Rollins v. Massanari</u>, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly rejected opinion of treating physician where physician had prescribed conservative treatment and plaintiff's activities and lack of complaints were inconsistent with the physician's disability assessment).

Although the ALJ cited minimal treatment, the record reveals that Plaintiff received opioid, anti-convulsant, and psychotropic medications; received a CPAP machine; and twice received trigger point injections by a pain management doctor, but could not continue because of the cost.  (AR 380-84.)

The ALJ also stated that the treatment records indicate reported improvement at times with medications.  Plaintiff argues that the ALJ's finding that Plaintiff reported improvement at

1   times is vague.  Plaintiff argues that the ALJ cited no evidence to support his conclusion that

2   Plaintiff experienced any significant prolonged improvement.

3        Medical improvement from treatment supports an adverse inference as to the credibility

4   of a claim of ongoing disability.  Morgan v. Comm'r of Soc. Sec, 169 F.3d 595, 599 (9th Cir.

5   1999); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).  Impairments that can be adequately

6   controlled with treatment are not disabling.  Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d

7   1001, 1006 (9th Cir. 2006).

8        As the ALJ acknowledged, on October 20, 2011, Plaintiff reported severe pain that has

9   not been helped with medications or shots.  (AR 321.)  On that same date, Plaintiff asked Dr.

10  Solis what else she could do for the pain.  (AR 321.)  Although Plaintiff may have had times of

11  improvement, the record shows that Plaintiff still had severe pain even after taking medications

12  and receiving trigger point shots.  Therefore, the Court finds that minimal treatment and reported

13  improvement at times with medications are not specific and legitimate reasons supported by

14  substantial evidence in the record for rejecting Dr. Solis's opinion.

15            2.    Dr. Solis's Opinion is Not Supported by Objective Findings and Imaging of
                   Lumbar Spine and Physical Examinations Showed Only "Minimal  Abnormality"
16

17       The ALJ gave two related reasons for giving Dr. Solis's opinion no weight.  First, the

18  ALJ found that Dr. Solis's opinion is not supported by objective findings.  (AR 21.)  Second, the

19  ALJ found that imaging of Plaintiff's lumbar spine and physical examination findings show

20  minimal abnormality.  (AR 21-22.)

21       The ALJ need not accept a treating physician's opinion that is brief, conclusory, and

22  unsupported by clinical findings.  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

23  An ALJ may reject a physician's opinion where it is not supported by the physician's clinical

24  notes and other observations.  See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).

25       Here, Dr. Solis completed a Physical Residual Functional Capacity Questionnaire on

26  December 22, 2011.  (AR 350-53.)  Dr. Solis stated that her opinion was based on Plaintiff's

27  MRI and examination.  (AR 350.)  The Court notes that Plaintiff had x-rays done in 2012 and

28  2013, but these x-rays were taken after Dr. Solis rendered her December 2011 opinion.

1  Therefore, Defendant is correct that Dr. Solis could not have based her opinion on Plaintiff's
2  2012 and 2013 x-rays.

3      Plaintiff argues that Dr. Solis partially based her opinion on her examinations of Plaintiff
4  and partially on the MRI performed in 2011.  However, the MRI report is not in the record.
5  According to Plaintiff's argument, an ALJ cannot reject the opinion of a physician as long as the
6  physician says that he or she relied upon test results, even if the test results are not in the record.
7  (ECF No. 30 at 9-10, AR 13-25.)  Here, the ALJ's opinion is based on the evidence in the record,
8  which does not include any MRI report or documentation about the results of an MRI.  (AR 13-
9  25).

10     Plaintiff argues that Dr. Solis stated a basis for her opinion that is missing from the
11  record, so the ALJ was obliged to contact Dr. Solis to obtain a copy of the MRI report before
12  rejecting her opinion for lack of basis.  See Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)
13  (holding that an ALJ erred in rejecting a physician's opinion for lack of basis without developing
14  the record to determine such basis).  Therefore, Plaintiff's argument is that the ALJ had a duty to
15  develop the record before rejecting Dr. Solis's opinion.  Defendant argues that the ALJ was not
16  obligated to recontact Dr. Solis just because Dr. Solis's opinion lacked support and was
17  inconsistent.

18     While the ALJ has a duty to further develop the record where the evidence is ambiguous
19  or the ALJ finds that the record is inadequate to allow for proper evaluation of the evidence, such
20  a duty does not require that the ALJ go out and obtain the evidence.  See Mayes v. Massanari,
21  276 F.3d 453, 459-60 (9th Cir. 2001); Tonapetyan, 242 F.3d at 1150.  Plaintiff bears the burden
22  to provide that record so that the ALJ can make an informed decision.  See Johnson v. Shalala,
23  60 F.3d 1428, 1432 (9th Cir. 1995.)  By allowing Plaintiff to supplement the record, the ALJ
24  faithfully discharged any duty he may have had to develop the record.  See Tonapetyan, 242 F.3d
25  at 1150 (internal citation omitted) ("The ALJ may discharge [his] duty [to develop the record] in
26  several ways, including: subpoenaing the claimant's physicians, submitting questions to the
27  claimant's physicians, continuing the hearing, or keeping the record open after the hearing to
28  allow supplementation of the record.").  At the beginning of Plaintiff's administrative hearing,

1    the ALJ asked Plaintiff's counsel if he had any new evidence to submit, and counsel responded

2    no.  (AR 32.)   The ALJ also asked Plaintiff's counsel if the record was complete, and counsel

3    responded that '[they had] been asking for MRI scan results from Dr. Solis's office.   He

4    apparently had her sent to Selma.   The MRI scan is referred to but we're still waiting for that.

5    That's the only thing."  (AR 32-33.)   Plaintiff's counsel stated that they would need a week to get

6    the MRI scan results, and later requested that the record be left open for two weeks to obtain the

7    results of Plaintiff's second appointment with Dr. Chen.  (AR 33, 58.)   The record was kept open

8    for two weeks after the hearing.  (AR 58.)   On December 9, 2013, Plaintiff's attorney sent a fax

9    stating that Plaintiff had nothing further to submit and that the file could be closed for a decision.

10   (AR 307.)   The ALJ complied and conformed with the duty to develop the record.

11          It is Plaintiff's burden to prove that she is disabled, Johnson v. Shalala, 60 F.3d at 1432,

12   and to the extent that there were additional MRI results, Plaintiff was given the opportunity to

13   submit them, but did not do so.   The ALJ discharged his duty to develop the record by keeping

14   the record open after the hearing to allow supplementation of the record, but Plaintiff did not

15   submit any MRI results or any other additional evidence.   Therefore, Plaintiff has not shown that

16   the ALJ failed to discharge a duty to recontact Dr. Solis or otherwise further develop the record

17   in this case.

18          Although Dr. Solis stated that she based her opinion on an examination of Plaintiff, Dr.

19   Solis's notes do not reveal objective findings that support her opinion.   Plaintiff, citing two

20   treatment notes (AR 322, 324), argues that Dr. Solis relied upon physical examinations which

21   revealed tenderness in the lumbar spine, left buttock, and left lateral thigh and positive straight

22   leg raises (SLR) on the left.   Prior to July 27, 2011, Plaintiff had not complained of back or left

23   leg pain to Dr. Solis.  (AR 327-40.)   In the comments for Plaintiff's July 27, 2011 physical

24   examination, it was noted that Plaintiff has hip pain and suspected sciatica.  (AR 341.)    On

25   September 9, 2011, Plaintiff complained of left leg pain and Dr. Solis noted that Plaintiff had

26   tenderness in her left buttock and left thigh.  (AR 324.)   While Dr. Solis noted single leg raises, it

27   appears that Dr. Solis did not note that they were positive.  (AR 324.)   Even if Plaintiff had a

28   positive straight leg raise test on September 9, 2011, this one finding is not sufficient to show

that Dr. Solis's opinion is supported by objective findings and that the ALJ erred.  On October 11, 2011, Plaintiff complained of lower left side back pain and Dr. Solis noted that Plaintiff had tenderness in her lumbar spine, left buttock, and left thigh.  (AR 322.)  Although the November 30, 2011 and December 11, 2011 progress notes mention Plaintiff's lower back pain and sciatica, there are no objective findings in those progress notes.  (AR 318, 319.)  Therefore, at the time Dr. Solis rendered her opinion in this matter, her treatment notes did not contain objective findings to support her opinion.  Accordingly, the fact that Dr. Solis's opinion was not supported by objective findings is a specific and legitimate reason supported by substantial evidence for rejecting Dr. Solis's opinion.

The ALJ also found that the imaging of Plaintiff's lumbar spine and physical examinations showed only "minimal abnormality."  (AR 21-22.)  Plaintiff's x-rays in 2012 were severely limited, but they indicated a slipped disc, bone spurs, sclerosis and narrowing of the S-1 joints.  (AR 362.)  Dr. Quint noted that Plaintiff's left spine range of motion was normal and that the 2012 spine x-ray showed some degeneration.  (AR 79.)  Plaintiff asserts that the ALJ did not explain how the 2013 x-rays contradict Dr. Solis's opinion.  Plaintiff contends that the 2013 x-rays of Plaintiff's lumbar spine revealed a slipped disc at L5-S1 and arthritis at the facet joints from L2 through S1 with foraminal narrowing.  (AR 408.)  There is no medical opinion in the record that interpreted the 2013 x-rays.  Therefore, because there was a change between Plaintiff's 2012 x-rays and 2013 x-rays and there was no interpretation in the record of the 2013 x-rays, the ALJ could not make the determination that the 2013 x-rays showed minimal abnormality.

As discussed above, Dr. Solis's physical examination findings show minimal abnormality.  Dr. Quint concluded that Dr. Solis had few physical examination findings to support her findings.  (AR 80.)  After Dr. Quint noted that there was a huge difference between Dr. Rush's opinion and Dr. Solis's opinion, Dr. Quint stated that it appears that Plaintiff has symptoms, but there are limited physical examination findings.  (AR 80.)  The other physical examination findings in the record also show only minimal abnormality.

The ALJ specifically detailed the results of Plaintiff's consultative examination with Dr.

12

Rush. During the consultative examination on February 23, 2012, Dr. Rush found that Plaintiff was able to walk without difficulty and move about the office without assistance. (AR 358-60.) Plaintiff was also able to walk on her heels and toes. (AR 360.) As the ALJ noted, Plaintiff's examination with Dr. Rush was mostly normal, with normal ranges of motion in her back, hip, knees, ankles, and feet. (AR 358-59.) Dr. Rush found that Plaintiff had 5/5 motor strength in the upper and lower extremities bilaterally; normal muscle bulk and tone; normal and equal deep tendon reflexes; and a negative straight leg raising test. (AR 358-59.) There was no evidence that Plaintiff had joint deformities, crepitus, effusion, tender points, or trigger points. (AR 359.) Plaintiff's lungs were clear and there was no evidence of rhonchi, wheezing, rales, or shortness of breath. (AR 358.)

The ALJ also specifically detailed Plaintiff's visit with Dr. Ramiro Guerrero at United Health Center in April 2013. (AR 19.) The ALJ stated that "[t]he physical examination was mostly normal with clear lungs, normal back, and appropriate mood and affect." (AR 19.) Dr. Guerrero noted that for the physical examination that Plaintiff's back was normal. (AR 397.) Dr. Guerrero found that Plaintiff's spinal stenosis of lumbar region was stable and not symptomatic and that Plaintiff had intermittent back pain and wanted to refill medications. (AR 397.)

Therefore, the physical examination findings in the record by Dr. Solis, Dr. Rush, and Dr. Guerrero show only minimal abnormality. Thus, the fact that the physical examination findings in the record showed minimal abnormality is a specific and legitimate reason for rejecting Dr. Solis's opinion that is supported by substantial evidence in the record.

　　　　3.　　Inconsistent with Other Medical Opinions

Plaintiff argues that stating that the opinion of the consultative examiner contradicts the opinion of a treating source is not a specific and legitimate reason to reject a treating source opinion. Defendant disagrees and notes that "non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." Thomas, 278 F.3d at 957 (internal citations omitted). "Independent clinical findings" can be either diagnoses that differ from those offered by another

physician and that are supported by substantial evidence, or findings based on objective medical

tests that the treating physician has not herself considered.  Orn v. Astrue, 495 F.3d 625, 632 (9th

Cir. 2007) (citing Allen, 749 F.2d at 579; Andrews, 53 F.3d at 1041).

The ALJ found:

> As noted above, Dr. Rush opined that the claimant had no physical limitations, and that opinion was supported by the mostly normal clinical findings [Exhibit 3F].  However, K. Quint, M.D., a state agency medical consultant, discounted his opinion, and Dr. Solis opinion, noting the great disparity between them [Exhibit 1 A, p. 12].  Dr. Quint opined that the claimant could lift and or carry 50 pounds occasionally and 25 pounds frequently.  She could stand and or walk for six hours in an eight hour workday, and sit for six hours in an eight hour workday.  She had unlimited capacity for pushing and/or pulling, hand/foot controls (except as indicated for lifting and carrying).  She could frequently climb ramps and/or stairs, and occasionally climb ladders, ropes or scaffolds.  She could frequently balance, stoop, kneel, crouch or crawl.  She had no manipulative, visual, or communicative limitations.  She must avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation; and she must avoid concentrated exposure to unprotected heights [Exhibit 1A/8, 10-12].  L. Bobba, M.D., another state agency medical consultant, subsequently endorsed Dr. Quint's opinion [Exhibit 5A/7, 10-12].

> Dr. Quint's opinion is supported by and consistent with other record evidence, including objective medical findings.  In addition, Dr. Quint has an understanding of social security disability programs and requirements.  For these reasons, I accord Dr. Quint and Dr. Bobba's opinions great weight.

(AR 22.)

Defendant argues that Dr. Solis's opinion was in conflict with that of Dr. Rush, the

consultative examiner.  However, it appears that the ALJ did not specifically give any weight to

Dr. Rush's opinion.  (AR 13-25.)  Also, in giving great weight to Dr. Quint's opinion, the ALJ

noted that Dr. Quint discounted Dr. Rush's and Dr. Solis's opinion because of the great disparity

between them.  (AR 22.)  Therefore, it appears that the ALJ did not reject Dr. Solis's opinion

because of Dr. Rush's opinion.

Defendant also argues that Dr. Quint and Dr. Bobba's opinions as State agency

physicians amount to substantial evidence for rejecting Dr. Solis's opinion.  Dr. Quint and Dr.

Bobba's opinions rested on results from objective clinical tests that Dr. Solis did not consider.

Dr. Solis did not consider the 2012 x-rays or Dr. Rush's examination, but Dr. Quint and Dr.

Bobba considered the 2012 x-rays and Dr. Rush's examination.  As stated above, Dr. Rush's

consultative examination indicated that Plaintiff had negative results for the straight leg raising

test; no shortness of breath at rest; no evidence of rhonci, wheezing or rales; no joint deformities, crepitus, effusion, tender of trigger points; 5/5 motor strength in the upper and lower extremities bilaterally with normal muscle bulk and tone; normal and equal bilateral deep tendon reflexes; and the ability to walk without difficulties, including walking on her toes and on her heels.  (AR 357-60.)

Dr. Quint and Dr. Bobba's opinions are consistent with independent clinical findings, namely, Dr. Rush's consultative examination findings.   Therefore, the Court finds that the contrary opinions of Dr. Quint and Dr. Bobba are additional specific and legitimate reasons for rejecting the opinion of Dr. Solis.  See Tonapetyan, 242 F.3d at 1149.  The Court also finds that Dr. Quint and Dr. Bobba's opinions constitute substantial evidence supporting the ALJ's findings with respects to Plaintiff's limitations.

4.   The ALJ Properly Rejected Dr. Solis's Opinion

Even if the ALJ gave several improper reasons for rejecting Dr. Solis's opinion, the ALJ provided other specific and legitimate reasons for rejecting Dr. Solis's opinion that are supported by substantial evidence in the record.   The ALJ has the discretion to weigh the value of the different medical opinions, resolve conflicts in the evidence, and determine which opinions to reject or accept.   Lingenfelter, 504 F.3d at 1042.   The ALJ properly found that Dr. Solis's opinion was not credible because her opinion is not supported by objective findings; physical examination findings in the record show minimal abnormality; and her opinion is inconsistent with Dr. Quint and Dr. Bobba's opinions.   These reasons are specific and legitimate reasons supported by substantial evidence in the record for rejecting Dr. Solis's opinion.   Accordingly, the Court finds that the ALJ properly rejected Dr. Solis's opinion.[2]

**B.    Plaintiff's Credibility**

Plaintiff argues that the ALJ erred by finding her not credible.   Defendant contends that the ALJ permissibly found that Plaintiff was not credible because of Plaintiff's inconsistent statements; Plaintiff's daily activities; and Plaintiff's failure to comply with treatment.

---

[2] Since the Court finds that the ALJ did not err in rejecting Dr. Solis's opinion, the Court does not address Plaintiff's argument that Dr. Solis's opinion should be credited and the matter remanded for an award of benefits.

"An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." Orn v. Astrue, 495 F.3d at 635 (internal punctuation and citations omitted).  Determining whether a claimant's testimony regarding subjective pain or symptoms is credible requires the ALJ to engage in a two-step analysis.  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).  The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted).  This does not require the claimant to show that his impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms.  Smolen, 80 F.3d at 1282.

The ALJ can only reject the claimant's testimony regarding the severity of his or her symptoms by offering "clear and convincing reasons" for the adverse credibility finding.[3] Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1160 (9th Cir. 2008).  The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the testimony.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal punctuation and citations omitted).

Factors that may be considered in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors.  Lingenfelter, at 1040; Thomas, 278 F.3d at 958.  In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2)

---

[3] Defendant argues that the clear and convincing standard should not apply to evaluation of Plaintiff's testimony. However, the Ninth Circuit has rejected this argument in Garrison v. Colvin, 759 F.3d 995, 1015 n.18 (9th Cir. 2014).

unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1284).

The ALJ found:

The claimant is a 59-year old woman who alleges disability based on sciatic nerve; arthritis; numbness and pain in her feet; depression; anxiety; panic attacks; sleep apnea; shortness of breath; high cholesterol; and chronic obstructive pulmonary disease (COPD) [Exhibit 3E]. The claimant has reported that the pain in her back and left leg began around September 2011, and occurs on a daily basis. However, she also inconsistently reported that it "comes and goes" and is not triggered by any particular activity. She takes pain medications but they allegedly do not help, and she alleged she can no longer do activities such as driving, grocery shopping, and household chores due to pain [see Exhibit 5E]. These statements are not only internally inconsistent, but also inconsistent with other evidence, as noted above.

The claimant has received minimal treatment for physical impairments, mostly medication refills. She has not had any surgery since her alleged onset date, and no surgery has been recommended. An x-ray of the claimant's lumbosacral spine, taken on March 15, 2012, indicated moderate discogenic disease at L4-S1, with sclerosis and narrowing of the lower S1 joints, anterior spurring, and first degree spondylolisthesis of L4 on L5 [Exhibit 3F/9]. In October 2013, x-rays of the claimant's lumbar spine indicated normal lumbar lordosis, with no substantial scoliosis. There was also multi-level degenerative disc disease, as well as L5-S1 grade 1 anterior spondylolisthesis and facet arthrosis from L2-3 and L5-S1 with associated foramina narrowing. [Exhibit 9F].

There are significant gaps in the claimant's treatment record. From May 2009 through July 2010, the claimant received mostly medication refills [Exhibit 1F/20-27]. After July 2010, the claimant was not seen again until January 2011, and again received medication refills. The claimant mostly received medication refills through May 2011, when there was another gap in the record until September 2011. In September 2011, the claimant complained of leg pain, for with [sic] diagnosis of sciatica and an increase in her prescription for Neurontin [Exhibit 1F/13-20]. On October 11, 2011, the claimant was given a referral for an MRI of her back, and continued on her medications; however, on October 20, 2011, the claimant reported severe pain that has not been helped with medications or shots. The claimant's primary care physician gave her a prescription for Vicodin, but no other treatment other than the MRI referral [Exhibit 1F/10-11]; however, it does not appear from the medical evidence of record that the claimant ever followed up for this study.

. . .

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

The claimant testified that she lives with her spouse and one son. She is able to

dress and bathe herself, is able to prepare her own breakfast, helps with laundry, dusting, washing dishes, and fixing her bed. She spends about half her day doing crossword puzzles, although she allegedly must lie down [] for this activity. She testified that she is able to walk only one block. As noted above, she is also able to watch television, and handle money.

The claimant last worked as caregiver for her spouse's cousin (testimony; see also Exhibit 2E). The claimant has made inconsistent statements about the reason that she stopped working. Although the claimant stated she stopped working in April 2009 due to her condition [Exhibit 3E], but she told the consultative phycologist [in] April 2012 that she quit work to stay home with her daughter, who had cancer [Exhibit 4F/5]. [*sic*] The record also indicates that the claimant received unemployment benefits in 2011 [Exhibit 4D], and she admitted that she had to certify she was ready and able to work, and had looked for work as a caregiver. She nonetheless testified that she could not have performed such work, because she was unable to lift more than fifteen pounds. These inconsistencies, and others noted herein, detract from the credibility of the claimant's allegations.

The claimant has also made inconsistent statements with regard to her impairments. The claimant testified that some days she spends about 30% of the day in the bathroom, due to IBS; however, as noted above, the medical evidence of record indicates little treatment for this condition, and treatment has been satisfactory.

. . .

It is interesting to note the spouse's statement that the claimant takes too many medications [Exhibit 4E, p. 9]. The claimant has submitted medications lists [Exhibits 12E and 13E] indicating prescriptions by more than one doctor. She testified that her pain medication does not provide much relief, although she takes several such medications. She also testified that psychotropic medication does not help. These statements are not consistent with her reports to doctors when seeking prescription refills [e.g., Exhibit 7F, p. 6]. These inconsistencies also cast doubt on the credibility of allegations made by, and on behalf of, the claimant.

(AR 18-21.)

     1.    Activities of Daily Living

Plaintiff argues that the ALJ erred in finding that her daily activities are inconsistent with her allegations of disability. There are two ways for an ALJ to "use daily activities to form the basis of an adverse credibility determination: if the claimant's activity contradicts his testimony or if the claimant's activity meets the threshold for transferable work skills." Phillips v. Colvin, 61 F. Supp. 3d 925, 944 (N.D. Cal. 2014); Valentine v. Astrue, 574 F.3d 685, 694 (9th Cir. 2009); Molina, 674 F.3d at 1112-1113.

Plaintiff argues that the ALJ improperly found that her daily activities are inconsistent with her testimony because the ALJ does not explain why her sporadic household and self-care

activities are inconsistent with her testimony that she is unable to perform full-time work in a competitive work environment.  Defendant contends that Plaintiff's daily activities indicate that she is less impaired than she claims even if her daily activities are not transferable to the workplace.  Plaintiff also argues that her sporadic household and self-care activities do not contradict her testimony regarding her impairments, and specifically, that she has to lie down most of the day.

The ALJ cited Plaintiff's testimony at the hearing that she can dress and bathe herself; make herself breakfast; and help with laundry, dusting, washing dishes, and fixing her bed.  (AR 20, 40.)  Plaintiff also testified that she can only stand for about 20 minutes at a time and that she can only walk a block.  (AR 41-42.)  Plaintiff stated in her disability report that her ability to stand, walk, sit, and bend is affected by her conditions.  (AR 274.)  Plaintiff also stated that she could walk about 60 feet before having to rest and catch her breath for about 10 minutes.  (AR 274.)

The record does contain some contrary evidence, such as Plaintiff's testimony that she received help doing chores, suggesting that Plaintiff's activities are more limited than what they might indicate on their face.  However, it is the function of the ALJ to resolve any ambiguities, and if the ALJ's interpretation is reasonable and supported by substantial evidence, then it is not the Court's role to second-guess it.  See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).  Plaintiff's daily activities are inconsistent with her allegations that she is totally disabled.  The Court finds that the ALJ properly considered that Plaintiff's daily activities contradict her statements regarding the severity of her symptoms.  See Burch, 400 F.3d at 681 (affirming ALJ's finding that ability to care for personal needs, cook, clean, shop, interact with nephew and boyfriend, and manage finances suggests claimant is quite functional).

2.    Plaintiff's Inconsistent Statements

The ALJ found that Plaintiff's inconsistent statements detract from her credibility.  The ALJ cited multiple instances of inconsistencies in Plaintiff's statements: her daily activities; why she stopped working; her ability to work when she sought unemployment benefits; her IBS symptoms; her back and left leg pain; and her pain medications.  (AR 18-21.)

### a.      Statements about Activities of Daily Living

Plaintiff made inconsistent statements about her activities of daily living.  The ALJ noted in his decision that in Plaintiff's January 5, 2012 Function Report, Plaintiff reported no mental problems involving personal care and she stated that she is able to do light household chores, feed her cat, go shopping, handle money, do crossword puzzles, and read.  (AR 16-17, 269-76.)  However, as the ALJ noted, Plaintiff provided inconsistent statements in her January 5, 2012 pain questionnaire.  (AR 18, 265-66.)  Plaintiff stated that she can no longer drive most of the time, grocery shop, and do household chores because of the pain.  (AR 266.)  Therefore, the ALJ properly found that Plaintiff's inconsistent statements about her activities of daily living are a reason for finding her not credible.

### b.      Statements about Stopping Work

Plaintiff also made inconsistent statements about why she stopped working.  (AR 20-21.)  The ALJ found that Plaintiff is not credible because she stated multiple times that she stopped working to care for her daughter, but in her disability forms, she stated that she stopped working due to her disability.  (AR 20-21.)  Plaintiff argues that the third party statement may not be an accurate representation of what Plaintiff said.  However, Dr. Lewis, the mental consultative examiner, included a direct quote from Plaintiff in her report.  (AR 372.)  Dr. Lewis noted that Plaintiff "reports she had a good working relationship with her boss and coworkers and stopped working because '[she] went to stay with [her] daughter because she had cancer.' " (AR 372.)  There is no mention that Plaintiff left work because of her disability.  (AR 372.)  Therefore, Dr. Lewis's quote is probative and there is no evidence that Dr. Lewis's note is inaccurate.   In contrast, in Plaintiff's November 29, 2011 disability report, she stated that she stopped working on April 1, 2009, because of her condition(s).  (AR 249-50.)

Plaintiff argues that even if the reason that Plaintiff stopped working was to care for her daughter, this is not an adequate reason to discredit her.  See Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  It is not the fact that Plaintiff left work to care for her daughter that has a bearing on her credibility.  It is the fact that Plaintiff made inconsistent statements about the reason that she stopped working that affects her credibility.  See Thomas v. Barnhart, 278 F.3d

958–59 (noting that an ALJ may discredit a claimant due to inconsistent testimony); <u>Bruton v. Massanari</u>, 268 F.3d 824, 828 (9th Cir. 2001) (stating that ALJ did not err by considering that claimant left his job because he was laid off, rather than because he was injured).  Therefore, the ALJ properly considered Plaintiff's inconsistent statements about why she stopped working.

### c.  Statements about Unemployment Benefits

The ALJ cited inconsistencies in statements Plaintiff made regarding unemployment benefits.  Plaintiff argues that the record does not indicate and the ALJ did not ask Plaintiff whether Plaintiff held herself out as available to full-time or part-time work when she applied for unemployment benefits.  The ALJ considered that Plaintiff received unemployment benefits during the time that she claimed she was disabled.  (AR 21, 36-37, 231.)  In order to receive unemployment benefits, Plaintiff had to certify that she was ready and able to work.  <u>See Copeland v. Bowen</u>, 861 F.2d 536, 542 (9th Cir. 1988).  Further, Plaintiff indicated that she searched for a job as a caregiver.  While it is possible that Plaintiff only held herself out as being available to part-time work, and therefore, still could have been disabled, Plaintiff also made statements during the hearing about her ability to work during the time period when she received unemployment benefits.  During the hearing before the ALJ, Plaintiff testified that she could not have performed such work as a caregiver when she was seeking unemployment benefits, because she was unable to lift more than fifteen pounds.  (AR 21, 37.)

The ALJ considered the fact that Plaintiff testified that she certified she was ready and able to work when she applied for unemployment benefits in 2011, but she also testified that she could not have performed such work.  Therefore, the ALJ properly considered, and there is substantial support in the record, that Plaintiff's statements about her inability to work during the time period when she certified for unemployment benefits that she could have worked undermined her credibility.  <u>See Thomas</u>, 278 F.3d at 959; <u>Light v. Soc. Sec. Admin.</u>, 119 F.3d 789, 792 (9th Cir. 1997).

### d.  IBS Symptoms

The ALJ found that Plaintiff made inconsistent statements regarding her impairments, because her testimony about the time she spends in the bathroom due to her IBS.  The ALJ found

1  inconsistencies with the small amount of treatment for this condition and that her treatment was

2  satisfactory.  (AR 21.)  Plaintiff did not address this reason in her opening brief or reply brief.

3  Plaintiff testified at the hearing that IBS causes her to have good and bad days; and she has bad

4  days three times a week.  (AR 47.)  Plaintiff also testified that during those bad days, she is in the

5  bathroom about thirty percent of the day.  (AR 47-48.)

6  　　　As noted by the ALJ, on April 3, 2013, Dr. Guerrero noted that Plaintiff has a history of

7  IBS without constipation which is satisfactory with treatment.  (AR 395.)  In Plaintiff's problem

8  list and medication list from United Health Centers, one of Plaintiff's chronic problems is IBS.

9  (AR 317.)  On April 16, 2009, Dr. Solis noted that Plaintiff has IBS, prescribed medication, and

10  noted that Plaintiff may need a GI follow up and colonoscopy if it persists.  (AR 340.)  There is

11  no evidence in the record of treatment other than medication and the only indication in the record

12  is that Plaintiff's medication is satisfactory.  Therefore, the ALJ properly considered Plaintiff's

13  inconsistent statements regarding how much time Plaintiff spends in the bathroom for her IBS

14  compared to the medical evidence in the record concerning this condition and the satisfactory

15  treatment that she has received for it.

16  　　　**e.**　　　**Statements about Back and Left Leg Pain**

17  　　　The ALJ noted inconsistencies regarding Plaintiff's statements regarding her back and

18  left leg pain.  (AR 18.)  Plaintiff did not address this reason in her opening brief or reply brief.

19  The ALJ noted that Plaintiff reported that her back and left leg pain occurs on a daily basis.  She

20  also reported that it "comes and goes" and is not triggered by any particular activity and she has

21  some back pain constantly traveling down her legs.  (AR 18, 45-46.)  However, in Plaintiff's

22  January 5, 2012 pain questionnaire, she reported that her pain "comes and goes night and day"

23  and is not triggered by any particular activity.  (AR 265.)  On February 23, 2012, Plaintiff told

24  Dr. Rush that she had intermittent low back pain for the past several years.  (AR 356.)  On April

25  20, 2012, Plaintiff told Dr. Lewis, the psychiatric consultative examiner, that her back pain has

26  been off-and-on for years.  (AR 371.)  Dr. Guerrero noted that Plaintiff's back pain is

27  intermittent.  (AR 397.)  Therefore, the ALJ properly considered Plaintiff's inconsistent

28  statements regarding her back and left leg pain.

### f.      Pain Medication and Psychotropic Medication

The ALJ noted that Plaintiff testified that her pain medication does not provide much relief and that her psychotropic medication does not help, but these statements are not consistent with her reports to doctors when seeking prescription refills.  (AR 21.)   Plaintiff did not specifically address this reason in her opening brief or her reply brief.

On December 11, 2012, Plaintiff requested narcotic medication refills.  (AR 379.)   On June 27, 2012, Plaintiff received additional medications for her lower back pain.  (AR 381.)   On April 3, 2013, Plaintiff told Dr. Guerrero that she wanted to refill her medications for her back pain.  (AR 397.)   On November 30, 2011, Dr. Solis noted that Plaintiff's depression had improved.  (AR 319.)   On April 9, 2013, Dr. Yates at Adventist Health noted that Plaintiff reported improvement of her depression with medication.  (AR 407.)   Specifically, Plaintiff reported that Trazodone was working.  (AR 407.)   In subsequent visits on June 18, 2013, and August 16, 2013, Plaintiff reported that she was doing well on her medication.  (AR 401, 404.)

In Plaintiff's pain questionnaire, she states that the medication does not relieve the pain.  (AR 265.)   During the hearing, Plaintiff testified that her medication for depression and anxiety helps her symptoms a little.  (AR 38.)   Plaintiff also testified that she does not find her pain medication helpful.  (AR 39.)   Therefore, the ALJ properly considered Plaintiff's inconsistencies regarding her pain and psychotropic medications in evaluating Plaintiff's credibility.

Accordingly, the Court finds that the ALJ provided clear and convincing reasons that are supported by substantial evidence in the record for the determination that Plaintiff's symptoms are not as limiting as she claimed.[4]

### C.      Combined Impact of Plaintiff's Impairments

If the Court does not remand her case for payment of benefits, Plaintiff asks the Court to remand her case with instructions to reconsider the severity of her impairments at step two and the combined impact of her impairments throughout the subsequent steps.  Plaintiff argues that

---

[4] Defendant also argues that the ALJ discredited Plaintiff for several additional reasons, such as Plaintiff's sporadic treatment, lack of objective findings, and non-compliance with treatment.  As the Court finds that the ALJ gave clear and convincing reasons for discrediting Plaintiff based on Plaintiff's daily activities and Plaintiff's numerous inconsistent statements, the Court elects not to address these additional reasons argued by Defendant.

1   the ALJ did not consider the severity of her impairments, namely Plaintiff's chronic pain or hip

2   arthrosis, at step two.  Plaintiff also argues that the ALJ did not consider the combined impact of

3   her severe and nonsevere impairments, including her chronic pain or hip arthrosis, on her

4   functioning throughout the subsequent steps.  Plaintiff contends that Plaintiff was diagnosed with

5   chronic pain by January 2012, which she was prescribed Vicodin for because she could not

6   afford injections.

7       Defendant argues that Plaintiff merely proffered a list of conditions and underdeveloped

8   this claim.  Plaintiff replies that she did discuss most of her progressive impairments, gave

9   examples of how they impacted her functioning in combination, and cited supporting law.

10      Under the Social Security Act, disability is defined as the "inability to engage in any

11  substantial gainful activity by reason of any medically determinable physical or mental

12  impairment which can be expected to result in death or which has lasted or can be expected to

13  last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The burden

14  is on the claimant to prove that he is disabled at steps one through four, at step five the burden

15  shifts to the Commissioner to show that there are a significant number of jobs in the national

16  community that the claimant can perform.  Bray v. Commissioner of Social Security Admin.,

17  554 F.3d 1219, 1222 (9th Cir. 2009).

18      As described above, at step two the ALJ is to consider the medical severity of the

19  impairments to determine if they meet the durational requirements under the Act.  20 C.F.R. §

20  404.1520(a)(4)(ii).  A severe impairment is an impairment or combination of impairments that

21  significantly limits the claimant's physical or mental ability to do basic work activities.   20

22  C.F.R. § 404.152(c).  Basic work activities are the abilities and aptitudes necessary to do most

23  jobs.  20 C.F.R. §404.1521(b).  "An impairment is not severe if it is merely 'a slight abnormality

24  (or combination of slight abnormalities) that has no more than a minimal effect on the ability to

25  do basic work activities.' "  Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R.

26  No. 96–3(p) (1996)).  Courts have found that step two is "a de minimis screening device [used]

27  to dispose of groundless claims."  Webb, 433 F.3d at 687 (quoting S.S.R. No. 85–28 (1985);

28  Smolen, 80 F.3d at 1290).

At step two, the ALJ found that Plaintiff's COPD, obesity, and degenerative disc disease of the lumbar spine were severe impairments.  (AR 15.)  At step two, the ALJ determined that Plaintiff's Bell's palsy, high cholesterol, hypertension, irritable bowel syndrome, and sleep apnea are not severe.  (AR 15-17.)

The Ninth Circuit recently held in an unpublished case that "[t]he existence of some evidence in the medical records regarding these conditions is not sufficient to have put the ALJ and the Appeals Council on notice that [the claimant] claimed specifically that these conditions constituted severe impairments."  Harshaw v. Colvin, 616 F. App'x 316 (9th Cir. 2015).[5]  The Ninth Circuit has held that "at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal."  Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999), as amended (June 22, 1999).

Here, Plaintiff did not allege chronic pain or hip arthrosis as disabilities.  In Plaintiff's November 29, 2011 disability report, she stated that she has the following conditions: sciatic nerve pain in the left side of leg; arthritis; numbness/pain in feet with limited mobility; depression and anxiety; panic attacks; sleep apnea; shortness of breath; high cholesterol; and COPD.  (AR 249.)  Plaintiff did not say that she has chronic pain or hip arthrosis.  (AR 249.)  In Plaintiff's January 5, 2012 pain questionnaire, when asked to describe her pain, she stated that she has pain in her lower back and left leg and that the pain spreads to her feet, which are numb.  (AR 265.)  In Plaintiff's June 25, 2012 disability report for appeal, when asked if she has any new limitations or new illnesses, injuries, or conditions since her last disability report, she stated yes, but then for detail, she only stated "WORSE."  (AR 279.)  In Plaintiff's December 21, 2012 disability report for appeal, Plaintiff stated that there has not been any change in her illnesses, injuries, or conditions and she does not have any new illnesses, injuries, or conditions since her last disability report.  (AR 288.)

Imaging results in the record do reveal that Plaintiff has mild arthrosis at her hips.  On October 15, 2013, Plaintiff had bilateral x-rays of her hips because of osteoarthritis.  (AR 410.)

---

[5] Unpublished dispositions and orders of the Ninth Circuit issued on or after January 1, 2007 may be cited to the courts of this circuit in accordance with FRAP 32.1.  9th Cir. R. 36-3(b).

The x-ray revealed that Plaintiff has mild arthrosis at both hips with mild hips; no prominent joint space narrowing; bilateral mild sacroiliac spondylosis; and calculus projected over the right sacroiliac that could be an appendicolith or phlebolith. (AR 410.)

However, at the November 20, 2013 hearing before the ALJ, Plaintiff did not mention her hip arthrosis or chronic pain. (AR 32-58.) Plaintiff did discuss her back pain and her limitations, including that she can only lift up to fifteen pounds, stand for about twenty minutes, and walk for a block. (AR 37-42, 45-46.)

Plaintiff's counsel did not raise the issue of Plaintiff's chronic pain or hip arthrosis. "Counsel are not supposed to be potted plants at administrative hearings. They have an obligation to take an active role and to raise issues that may impact the ALJ's decision while the hearing is proceeding so that they can be addressed." Solorzano v. Astrue, No. ED CV 11-369-PJW, 2012 WL 84527, at *6 (C.D. Cal. Jan. 10, 2012). If Plaintiff was alleging disability due to her chronic pain or hip arthrosis, she had an obligation to raise these issues during the administrative proceedings to provide the Commissioner with the opportunity to consider and address these issues.

Plaintiff did not provide any notice to the Commissioner that she was alleging that she was limited in her ability to work due to her chronic pain or hip arthrosis. Therefore, the Court finds that the ALJ did not err in failing to consider Plaintiff's hip arthrosis and chronic pain at step two. Even if the ALJ did err in failing to find that Plaintiff's hip arthrosis and chronic pain were severe at step two, any error was harmless. Adding Plaintiff's hip arthrosis and chronic pain as additional severe impairments at step two would have had no effect on the ultimate question of disability in this action in light of the ALJ's determination at step three and the ALJ's consideration of all of Plaintiff's symptoms at step four. See Stout, 454 F.3d at 1054-55 (harmless error where mistake was non-prejudicial to the claimant or irrelevant to the disability conclusion); Crawford v. Colvin, No. 2:13-cv-2278-EFB, 2015 WL 1393231, at *3 (E.D. Cal. Mar. 25, 2015) (any error at step two harmless when the impairments were considered in assessing plaintiff's RFC). Since Plaintiff "passed" the "de minimis screening device" at step two, any error by the ALJ in failing to include Plaintiff's hip arthrosis and chronic pain as severe

1 | impairments at step two was harmless.

2 |     At step three, the ALJ had to consider whether Plaintiff's impairments met or equaled a
3 | listing impairment.  At step four, the ALJ must determine the Plaintiff's RFC.  When a claimant
4 | suffers from multiple impairments, the Commissioner must consider their combined effect in
5 | determining whether the claimant is disabled.  Macri v. Chater, 93 F.3d 540, 545 (9th Cir. 1996)
6 | (citing Gregory v. Bowen, 844 F.2d 664, 666 (9th Cir. 1988).

7 |     Plaintiff argues that the ALJ should have considered the effect of her chronic pain and
8 | hip arthrosis in conjunction with her other impairments.  "The mere existence of an impairment
9 | is insufficient proof of a disability" because the "claimant bears the burden of proving that an
10 | impairment is disabling."  Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993).  The ALJ
11 | stated that he rendered his RFC determination "[a]fter careful consideration of the entire record"
12 | and that he "considered all symptoms and the extent to which these symptoms can reasonably be
13 | accepted as consistent with the objective medical evidence and other evidence."  (AR 18.)

14 |     The ALJ found that Plaintiff has degenerative disc disease of the lumbar spine and
15 | discussed in his decision Plaintiff's complaints of sciatic nerve pain and leg pain.  (AR 15-22.)  It
16 | appears that Plaintiff's allegations of chronic pain and hip arthrosis are related to her other
17 | impairments that the ALJ did consider, such as Plaintiff's lumbar pain, including her sciatica and
18 | pain in her leg and buttocks, COPD, obesity, sleep apnea, depression, and anxiety.  Plaintiff has
19 | not proffered any additional limitations that she has as a result of her chronic pain or hip
20 | arthrosis.  Further, as stated above, Plaintiff failed to allege that she suffers from hip arthrosis or
21 | chronic pain during the administrative proceedings.

22 |     Accordingly, the Court finds that the ALJ did not err by failing to address Plaintiff's
23 | chronic pain and hip arthrosis.

24 | **V.**

25 | **RECOMMENDATIONS**

26 |     Based on the foregoing, it is HEREBY RECOMMENDED that Plaintiff's appeal from
27 | the final decision of Defendant Commissioner of Social Security be DENIED and judgment be
28 | entered in favor of Defendant Commissioner of Social Security and against Plaintiff Brenda

Wilson.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fourteen (14) days of service of these findings and recommendations, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."   The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   **August 18, 2016**

UNITED STATES MAGISTRATE JUDGE